UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| TIMOTHY JAMES WILLIAMS, JR., and | ) | |
| ANDRIAN SHANNON WILLIAMS, | ) | |
| | ) | Case Number 15-71767 |
|      Debtors. | ) | |
| | ) | |
| JUDY A. ROBBINS, | ) | |
| United States Trustee For Region Four, | ) | |
| | ) | |
|      Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | Case Number 16- |
| | ) | |
| DARREN DELAFIELD, | ) | |
| UPRIGHT LAW LLC, | ) | |
| LAW SOLUTIONS CHICAGO LLC, | ) | |
| JASON ROYCE ALLEN, | ) | |
| KEVIN W. CHERN, | ) | |
| EDMUND SCANLAN, and | ) | |
| SPERRO LLC, | ) | |
| | ) | |
|      Defendants. | ) | |

**COMPLAINT**

Now comes Judy A. Robbins, United States Trustee for Region Four, by counsel, and files this complaint to: (i) require the defendants to disgorge funds received; (ii) cancel the debtors' retainer agreement with Upright Law LLC and/or Law Solutions Chicago, LLC, and Darren Delafield; (iii) enjoin the debt relief agency defendants from committing future violations of 11 U.S.C. § 526; (iv) impose appropriate civil penalties against the debt relief agency defendants; (v) indefinitely prohibit Darren D. Delafield, Upright Law LLC, Law Solutions Chicago, LLC, Jason Royce Allen, Kevin W. Chern, and Edmund Scanlan from practicing before this court whether directly or indirectly; (vi) order Sperro LLC and its affiliates to

disgorge funds received, and prohibit Sperro LLC and its affiliates from remitting any funds to Upright Law LLC, Law Solutions Chicago, LLC, or any of their affiliates, members, or agents; and (vii) take such other action as the court deems necessary to deter such misconduct and similar schemes in the future.

## I.      Jurisdiction and Venue

1.      This adversary proceeding relates to the chapter 7 case of Timothy James Williams, Jr. and Andrian Shannon Williams (the "Williamses"), case number 15-71767 (the "Williams Bankruptcy Case"), pending in the United States Bankruptcy Court for the Western District of Virginia, Roanoke Division.

2.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

3.      This complaint is based on 11 U.S.C. §§ 105, 307, 329, and 526; Fed. R. Bankr. P. 2016 and 2017; Local Rules 2090-1 and 5005-4; and the court's inherent power.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## II.      Background

### A.      The Parties

6.      Plaintiff United States Trustee is a Department of Justice official with standing to file this complaint under 11 U.S.C. § 307.

7.      Defendant Kevin W. Chern is an attorney licensed by the State of Illinois to practice law.  Chern is not licensed to practice law in Virginia.

8.      Defendant Jason Royce Allen is an attorney licensed by the State of Illinois to practice law.  Allen is not licensed to practice law in Virginia.

9.      Defendant Law Solutions Chicago LLC ("LSC") is an Illinois company.  It filed articles of organization with the Illinois Secretary of State on October 10, 2008.  It is authorized to transact business in Illinois under the following active assumed names: Jason Allen Law LLC; Upright Law LLC; and Allen & Associates, LLC.  It has the following inactive assumed names in Illinois: Immediate Payroll Information Services LLC; and Law Solutions.  It also holds itself out as a service of "Allen Chern Law."

10.      LSC solicits clients over the Internet.  On its website, it purports to have "Local Offices Nationwide."

11.      On information and belief, LSC does not have offices nationwide.

12.      LSC was domesticated in Virginia on April 14, 2014.  It listed its principal office as 25 E. Washington Street, Suite 400, Chicago, Illinois.

13.      Chern, Allen, and Lynn Coleman are listed in documents filed with the Illinois Secretary of State as the managers of LSC.

14.      On information and belief, Chern and Allen are members in LSC and its affiliates.

15.      According to LSC's website, Defendant Edmund Scanlan  is the chief executive officer of "Upright Law," and a manager of an entity named Upright Litigation, LLC.  According to LSC's website, "all legal services are provided by affiliated and related entities." The website states that Scanlan is the "CEO" or "Administrator" of every entity allegedly providing the legal services to prospective debtors.

16.      Defendant Upright Law LLC is a Virginia company.  Allen signed the articles of organization for Upright Law LLC that were filed with the Virginia State Corporation Commission on or about January 9, 2015.  According to the articles, the company's principal

office is located at 98 Alexandria Pike, Suite 10, Warrenton, Virginia 20186.  A copy of the articles of organization is attached as Exhibit 1.

17.     Defendant Darren Delafield is a longstanding member of the bar of the United States Bankruptcy Court for the Western District of Virginia.  Delafield's law office is located at 4311 Williamson Road, N.W., Roanoke, Virginia 24012.  Delafield practices before this court as a sole practitioner and also purports to be a partner in Upright Law LLC by virtue of a limited partnership agreement.  During the relevant period of time for this case, Delafield also purported to be a partner in Prince Law LLC by virtue of a limited partnership agreement.

18.     Delafield is subject to an April 30, 2013 consent order entered in *Robbins v. Delafield* (In re Randolph), No. 12-71417 (attached as Exhibit 2 and incorporated herein by reference) regarding his practice of law before this Court.  Among other things, the order requires Delafield to review "the schedules, statement of financial affairs, and other documents filed on behalf of his clients" and to "personally compare the information contained in the documents filed with the Court to ensure that the information is consistent with other items listed in the documents, and is consistent with tax returns, pay advices, and other documentation that he obtains from the debtors."

19.     Defendant Sperro LLC (collectively with its affiliates, "Sperro") is an entity owned by Brian Fenner that does business as Sperro Towing and Recovery.  Affiliates of Sperro include Fenner & Associates LLC, which is commonly owned with Sperro, and uses the same address, 2534 Bluff Road, Indianapolis, Indiana, and the same registered agent, Joseph F. Thoms.

20.     The Williamses are assisted persons as defined by 11 U.S.C. § 101(3).

21.     LSC, Upright Law LLC, and Delafield are debt relief agencies as defined in 11

U.S.C. § 101(12A), and all of them provided bankruptcy assistance to the Williamses.

B.      *The Appearance and Formation of Upright Law LLC in the Western District of Virginia*

22.     On information and belief, beginning in 2014, Allen, Chern, and/or LSC began

recruiting attorneys licensed to practice in the Western District of Virginia to represent

prospective debtors, including assisted persons, who had paid money to LSC for representation

in bankruptcy cases to be filed in the United States Bankruptcy Court for the Western District of

Virginia.  Upon information and belief, attorneys that agreed to participate were given "limited

partnership agreements" to sign.

23.     On or prior to January 10, 2015, Delafield obtained a second ECF password to use

in connection with cases filed as a purported partner or representative of Upright Law LLC.  On

information and belief, Delafield signed a Case Management/Electronic Case Filing (CM/ECF)

System Participant Registration Form to obtain the password.  On information and belief,

Delafield represented his firm name to be Upright Law LLC on the CM/ECF participant

registration form.  However, no law firm named Upright Law LLC had been registered with the

Virginia State Bar, and as a result no such law firm was authorized to practice law in Virginia at

that time.

24.     After the filing of articles of organization for Upright Law LLC with the Virginia

State Corporation Commission but prior to Upright Law LLC obtaining a certificate of

registration from the Virginia State Bar, Delafield used his Upright ECF password to file the

following cases and adversary proceedings: *McClenton* 15-60037; *Rubino* 15-70130; *Winners*

15-70247; *McClenton v. Asset Acceptance, LLC* 15-06024; *McClenton v. Springleaf Financial*

*Services* 15-06024; *Epperson* 15-70470; *McDaniel* 15-70572; *Harvey* 15-50564; *Richerson* 15-61444; *Bass* 15-61445; and *Royall* 15-71084.

25.     On or about August 12, 2015, Allen caused an application for a certificate of registration for Upright Law LLC (attached as Exhibit 3) to be filed with the Virginia State Bar. The application listed "John Morgan," "Edrie Pfeiffer," and "Darren Deerfield" (sic) as the members of Upright Law LLC who would practice law in Virginia.  ("Edrie Pfeiffer" is an attorney who has filed numerous bankruptcy cases purportedly as a representative of Upright Law LLC in the Eastern District of Virginia.)

26.     The application for a certificate of registration listed Upright Law LLC's address as 79 W. Monroe Street, Fifth Floor, Chicago, Illinois 60603.

27.     Although all documents filed with the Virginia State Bar must be signed by at least one member of the bar of Virginia, no person authorized to practice law in Virginia signed the application for a certificate of registration filed with the Virginia State Bar.  Allen (an Illinois lawyer) signed the certificate of registration filed with the Virginia State Bar.

28.     As the certificate of registration indicates, LSC and Upright Law LLC's dealings with Delafield are part of a broader pattern and practice of conduct.  For example, at least one other attorney has filed cases in this district purportedly as a representative of "Upright Law LLC" prior to that entity being authorized to transact business in Virginia.  John C. Morgan, Jr., a longstanding member of the bar of this court, obtained a second ECF password on or prior to October 29, 2014 to use in connection with cases filed as a purported partner or representative of Upright Law LLC.  On information and belief, Morgan signed a Case Management/Electronic Case Filing (CM/ECF) System Participant Registration Form to obtain the password.  On information and belief, Morgan represented his firm name to be Upright Law LLC on the

CM/ECF participant registration form.  However, no entity named Upright Law LLC was

authorized to practice law in Virginia at that time.   Prior to any entity named Upright Law LLC

being authorized to transact business in Virginia, Morgan filed the following two cases with his

Upright ECF password: Long 14-51144; and Duncan 14-71520

  C.  *The "New Car Custody Program"*

  29.  By May 2015, LSC began advising the lawyers it worked with (its "Valued

Partners") to participate in the "New Car Custody Program."

  30.  In an email dated June 18, 2015 (attached as Exhibit 4), Chern explained that the

program works as follows:

  Qualifications:

  -Client wants to file for Chapter 7 bankruptcy.
  -Client has a vehicle, motorcycle, boat, truck or other property that client is willing to
  surrender.
  -The property intended to be surrendered has no equity.
  -The property to be surrendered is worth greater than $5000.

  Program Details:
  -Client contacts Sperro LLC (Sperro), a towing and storage company, and arranges for
  Sperro to take custody of the debtor's property.
  -At time of surrender of vehicle to Sperro, Client signs a towing, storage and custody
  agreement with Sperro. . .Sperro charges customary and reasonable fees for these
  services. . .
  -UpRight notifies the finance company. . .that Sperro has custody of the vehicle. . .and
  they should recover the vehicle as soon as possible to avoid excessive storage fees.

  Benefits to Client:
  . . .
  -Immediately upon placing the vehicle in Sperro's custody, Sperro will remit the entire
  legal fee plus filing fee to UpRight Law on client's behalf. . .

  31.  On information and belief, Delafield received the email.

  32.  On information and belief, LSC and Sperro created The New Car Custody

Program as part of a scheme to generate revenue for themselves at the expense of prospective

debtors and secured lenders.   As part of this scheme, LSC advised prospective debtors with "qualifying" vehicles to enter the New Car Custody Program emphasizing that their bankruptcy legal fees would be paid.  To have a "qualifying" vehicle, the prospective debtors had to have no equity in the vehicle.  Prospective debtors who participated in the New Car Custody Program were directed to surrender their vehicle to Sperro and to incur new debt by signing its towing and storage agreement.  On information and belief, prospective debtors were advised by LSC that they would not have to pay the towing and storage fees incurred and that the transaction with Sperro was legal.   On information and belief, LSC and Sperro intentionally delayed or failed to provide proper notice to the lienholders to enable the filing of warehouseman liens under Indiana law, and the accumulation of storage fees.   The delay strategy sought to guarantee that even if the lienholder received notice of the sale, the lienholder would either pay Sperro's artificially inflated fees or abandon the vehicle thereby allowing Sperro to sell it.   Under either scenario, LSC and Sperro profited from the scheme.

33.      An example of a contract Sperro provides to prospective debtors – including, on information and belief, the Williamses – is attached as Exhibit 5.

34.      After a prospective debtor has signed a towing and storage contract with Sperro, Sperro takes possession of the prospective debtor's vehicle and transports it to a storage facility owned by Sperro, located in Indiana.

35.      Sperro charges inflated fees for towing and storage that are designed to permit it to assert a lien large enough to cover the fees that the debtor owes plus an additional amount to benefit Sperro.

36.     After the debtor fails to pay the charges, Sperro asserts a lien against the vehicle and purports to exercise its lien rights to conduct an auction of the vehicle to obtain title to the vehicle.

37.     Sperro pays LSC the fees and costs the prospective debtor agreed to pay for a bankruptcy case and, on information and belief, retains the rest of the proceeds.

38.     This situation has played out in multiple bankruptcy cases in multiple states in addition to having occurred in this case and in the *Scott* case (16-50158) pending before this court.

39.     Upon information and belief, some prospective debtors are told by LSC and/or Sperro that Sperro will take possession of the vehicles and obtain the consent of the secured creditors to sell the vehicles for the benefit of the secured creditors.

D.      *General Summary of the Business Model*

40.     When a prospective debtor from Virginia reviews the website operated by LSC, the prospective debtor is asked to provide his or her contact information to learn if they qualify for bankruptcy relief. Thereafter, agents of LSC – located, upon information and belief, in Chicago – call the prospective debtor, ask questions about his or her financial situation, and give the prospective debtor legal advice including, but not limited to, whether to file a bankruptcy petition and under which chapter to file it.

41.     If the prospective debtor agrees to hire "Upright," LSC asks the prospective debtor to provide information for accounts that can be debited for bankruptcy-related fees and costs quoted to the prospective debtor.  If the prospective debtor cannot pay the fee immediately, automatic withdrawals are set up to debit the prospective debtor's account over time.

42.     Upon information and belief, in at least some cases only after LSC collects the full amount quoted to the prospective chapter 7 debtor does LSC refer the prospective debtor to a "limited partner" licensed to practice law in Virginia.

43.     On information and belief, LSC pays the "limited partner" a percentage of the fee received by LSC from the prospective debtor "within 30 days of the end of the calendar month during which the petition is filed" and pays an additional percentage of the fee received "within 30 days of the end of the calendar month during which the Discharge Order is entered by Partner in the Database."

44.     On information and belief, Defendants have no way to run proper conflicts checks.  In addition, LSC controls all contact with prospective debtors until, in chapter 7 cases, all fees are collected by LSC.

45.     More than 30 cases, some under chapter 7 and some under chapter 13, have been filed in this court under the Upright ECF passwords issued to Delafield.

E.      *Transactions Involving the Williamses*

46.     By August 2015, the Williamses were financially distressed.  Among other things, they were having trouble maintaining the loan payments on their 2007 Ford Taurus.  As a result, agents of GCB Acceptance Corporation, the creditor holding a purchase money security interest in the Taurus, contacted the Williamses and discussed with them repossession of the car.

47.     The Ford Taurus was the first car the Williamses had ever financed.

48.     As a result of increasing creditor pressure, the Williamses began searching the Internet for information about bankruptcy.  They reviewed LSC's website and provided their contact information.  Shortly thereafter, LSC called the Williamses.

49.     Among other things, LSC advised the Williamses: (i) to file for bankruptcy relief; (ii) to file under chapter 7 of the Bankruptcy Code; and (iii) to participate in the "New Car Custody Program."

50.     The LSC agent advised the Williamses that under the "New Car Custody Program," Sperro would take their car, sell it, and use some of the proceeds to pay the fees and expenses quoted to represent the Williamses in a chapter 7 case.

51.     The Williamses were skeptical of the legality of the "New Car Custody Program." According to Mr. Williams, he was assured multiple times by LSC, including at least once by a "senior attorney," that the program was legal.

52.     On or prior to September 1, 2015, the Williamses received a towing and storage agreement from Sperro (the "Sperro Agreement").

53.     On information and belief, pursuant to the Sperro Agreement, the Williamses, upon the advice of LSC, incurred the following charges: $75.00 to load the car; $1.85 per mile to tow the car from the Williamses' residence in Saltville, Virginia to Indianapolis, Indiana; $75.00 to unload the car; and $45.00 per day in storage charges.

54.     Sperro's services were completely unnecessary.  Apart from the fact that LSC advised them to do so, the Williamses had no reason to enter into an agreement to have their vehicle towed or stored.

55.     On information and belief, pursuant to the Sperro Agreement, Sperro acquired a security interest in the Williamses' 2007 Ford Taurus.  Sperro's security interest in the Ford Taurus was not disclosed on the Williamses' Schedules and SOFA.

56.     On information and belief, LSC's agents advised the Williamses to participate in the "New Car Custody Program" to, among other things, fund payment of the Williamses' legal fees for this bankruptcy case.

57.     On September 1, 2015, an agent of Sperro advised Mr. Williams to fax Sperro the towing and storage agreement and an odometer disclosure "so we can proceed with assigning a carrier to you." On information and belief, the odometer disclosure names the Williamses as "sellers" of the Ford Taurus and either Sperro or Sperro's owner, Brian Fenner, as the "buyer" of the Ford Taurus. Upon information and belief, the odometer disclosure was provided to the Williamses to obtain the necessary paperwork to permit Sperro to effectuate the conversion of the Williamses' Ford Taurus by conducting an "auction" sale of the Ford Taurus and transferring the title to the Williamses' Ford Taurus under Indiana law, as part of the scheme to generate the money to pay LSC, Upright Law LLC, and Delafield's legal fees and to compensate Sperro by the conversion of the Williamses' Ford Taurus.

58.     On or about September 2, 2015, an agent of Sperro met the Williamses at their residence and took possession of their Ford Taurus, which car, upon information and belief, had a NADA clean retail value of approximately $4,000.00.

59.     By entering into the Sperro Agreement upon the advice of LSC, the Williamses became contractually obligated to Sperro to pay towing and storage fees and other charges, and granted Sperro a lien on the Ford Taurus in the event of non-payment.  Under the Sperro Agreement, Sperro became a creditor of the Williamses.   The Williamses' Schedules do not list Sperro as a creditor.

60.     Based upon LSC's legal advice, the Williamses transferred the Ford Taurus to Sperro in connection with and in contemplation of filing the Williamses' bankruptcy case, to pay

for the legal fees for LSC's (and Delafield's) bankruptcy representation and to pay for their bankruptcy case filing fee.

61.      On information and belief, Sperro began charging storage fees on September 4, 2015.

62.      On or about October 9, 2015, Sperro sold the Williamses' Ford Taurus at auction. Sperro asserted a lien of $2,448.45.  On information and belief, Sperro was aware or should have been aware there was a prior lien on the Ford Taurus and was required to take steps to notify the creditor that Sperro was in possession of the vehicle.

63.      On information and belief, Sperro paid LSC at least $1,985.00 in or around October 2015.  The Rule 2016(b) Disclosure of Compensation of Attorney for Debtor(s) (the "Rule 2016(b) Disclosure") filed in the Williams Bankruptcy Case, references a payment of the fees by "Sperro," but the complete details of the underlying transactions were not disclosed, and the Rule 2016(b) Disclosure did not reveal anything about the role of LSC or that the payment of legal fees for the bankruptcy representation derived from the transfer of the Williamses' property, the Ford Taurus, to a third party, Sperro.

64.      On information and belief, consistent with its business practices, LSC did not refer Delafield to the Williamses until the full fee quoted to the Williamses had been received.

65.      On information and belief, on or about September 9, 2015, a letter (attached as Exhibit 6) purportedly by Darren Delafield was sent to "General Acceptance Corporation" warning General Acceptance Corporation that the Williamses' vehicle – "upon which you allege to hold a security interest" – had been placed in the custody of Sperro.  The letter bore the letterhead of both "Upright Law" and "Allen Chern Law," and contained a legend stating that

"UpRight Law is a service of Allen Chern Law LLC."  The letter provided a return address for Mr. Delafield of 79 W Monroe, 5th Floor, Chicago, IL 60603.

66.     Although the letter was addressed to "General Acceptance Corporation," both LSC and Upright Law knew or should have known that the lender was GCB Acceptance Corporation.  Further, the letter was sent to an address that, upon information and belief, is associated with Regional Acceptance Corporation which is a North Carolina company having an address of 1424 E. Fire Tower Road, Greenville, North Carolina 27858.  According to the Tennessee Secretary of State's website, GCB Acceptance Corp.'s principal office is located at 4502 Bristol Highway, Johnson City, Tennessee 37601.  Thus, the purported notice regarding the Williamses' vehicle was sent to an entity that had no security or other interest in that vehicle. Meanwhile, no notice was sent to GCB Acceptance Corp., which was the actual secured lender.

67.     Even though the notice to "General Acceptance Corporation" about the Williamses' vehicle was supposedly sent by Delafield from Chicago on September 9, 2015, on information and belief, Delafield did not learn of the Williamses' matter until October 2015.

68.     The engagement agreement for bankruptcy services between the Williamses and Upright Law LLC is dated October 16, 2015.  A copy of the engagement agreement (not executed by Upright or Delafield), along with certain other disclosures by Upright dated October 16, 2015, is attached as Exhibit 7.

69.     The fee agreement provided that "[i]n addition to the Retainer, the Client shall be obligated to obtain/pay for . . . administrative costs, e.g. . . . gas limited to a flat fee of $100;" "cost of amended schedules ($176.00);" and a "contingency fee of 25% of garnishment/wage assignment recovery."

70.    The fee agreement also included a section entitled "Virtual Representation" which asserts that the clients understand that Upright LLC represents its clients virtually and reserves the right to charge its clients a $100 fee for each in-office visit, in addition to the fees already paid.  The agreement further cautions debtor that office visits may result in a delay in the debtor's case being filed.

E.    *The Bankruptcy Documents and Meeting of Creditors*

71.    On information and belief, Delafield reviewed with the Williamses the petition, schedules, statements, and other documents (collectively the "Bankruptcy Documents") that were filed with the court in the Williamses' Bankruptcy Case.  Delafield advised the Williamses to sign the various declarations contained on the Bankruptcy Documents and he filed the Bankruptcy Documents for the Williamses.

72.    Delafield filed a petition and schedules on behalf of the Williamses on December 22, 2016 more than two months after the retainer agreement was signed.  On information and belief, one reason why the petition was not filed until more than two months after the retainer agreement was to permit sufficient time for Sperro's warehouseman's lien to attach to the Williamses' vehicle.

73.    Both the petition and schedules required amendments.  The petition was amended to correct a mistake regarding one of the Williamses' first names that was spelled incorrectly more than 100 times.  Schedule C was amended to claim an additional exemption.

74.    After the filing of the petition, the United States Trustee appointed William E. Callahan, Jr. ("Callahan") as the chapter 7 trustee in the case.

75.    Callahan conducted the meeting of creditors on January 14, 2016.  The Williamses appeared and testified under oath.   Delafield represented them at the meeting.

76.     After Callahan finished his examination of the Williamses, GCB Acceptance

Corporation's attorney, David Hutton, examined the Williamses about their Statement Of

Intention For Individuals Filing Under Chapter 7, which provided that the Williamses intended to

surrender their Ford Taurus to GCB Acceptance Corporation.  The Williamses responded that

they did not have the car because they had given it to "Upright." Then, the following exchange

occurred:

| | |
|---|---|
| Delafield: | Actually, I think that actually it was put in storage by a company called Sperro. |
| Hutton: | Who is that? |
| Delafield: | And they then asserted a lien against it for storage that went unpaid.  And I think that they exercised a mechanic's lien against the vehicle and it's gone. |
| Callahan: | Who is "they" put it into storage?  Are you talking about the debtors? |
| Delafield: | The debtors.  Yeah, the debtors decided they didn't want to keep the vehicle and they didn't want to store it at their house and so they had Sperro store it on their lot.  And then GCB was contacted to pick up the vehicle and didn't and then Sperro said "fine, we're exercising a mechanic's lien against it." Those are the facts as I understand it.  I was not personally involved in any of that. Does that sound accurate to you? |
| Callahan: | Who is Sperro? |
| A. Williams: | It's a tow company.  Upright called us with their number.  Called us and then had Sperro call us and they had them scheduled to come pick up the car. |
| Unknown: | Ok |
| Callahan: | Who is Upright? |
| Delafield: | It's a, it's the national law firm I'm a limited partner with.  With Upright Law. |
| Hutton: | Why would they do that?  Why would they not let GCB take possession of it you didn't want it?  Why didn't you call GCB? |
| Delafield: | I can get you the contact information for a senior attorney at Upright Law and maybe they can answer that.  I can't answer that. |
| Callahan: | Is they, is Sperro in any way affiliated with Upright Law? |
| Delafield: | No, but Sperro did pay the attorneys' fees in this case for the filing of the bankruptcy. |
| Callahan: | Why? |
| Delafield: | I don't know. |

16

77.     Later that day, after the conclusion of the meeting of creditors, Chern learned of

the meeting from one or more communications from Delafield's office and/or Delafield.  Chern

then emailed "Fenner & Associates" (an affiliate of Sperro) to ask: "Timothy and Adrian [sic]

Williams – Virginia Car.  Do you have it?  Did you sell it?  What is the balance? Motion for lift

stay is pending."  "Fenner & Associates" responded, in part, as follows:

| | |
|---|---|
| Balance Due | $0.00 as of 1/14/2016 |
| Storage Lot | Sperro Towing and Recovery |
| Date Released | Friday, October 9, 2015 3:35 PM |
| Release Type | Released at auction |
| Date Impounded | Friday, September 4, 2015 7:41 PM (36 days) |
| Towed From | 2219 River Bottom Circle, Saltville, VA 24370 |
| Vehicle Description | 2007 Ford Taurus (Blue) |
| Plate # | |
| Reason for Impound | Abandoned Vehicle |
| Account (Other) | (No Account Specified) |
| VIN | *redacted* |
| Have Keys | Yes |
| | General Acceptance |
| Lienholder | 1424 Fire Tower Road |
| | Greenville NC 27858 |
| | Timothy Williams |
| Owner | 2219 River Bottom Circle |
| | Saltville VA 24370 |
| Call Number | 188 |
| Stock Number | 0687567 |
| Lien at Auction | $2448.45 |

78.     As the above communication reflects, Sperro knew that the vehicle was subject to

a lien.  Despite this, on information and belief, it wrongfully remitted most of the money it

received from the sale to LSC and/or Upright Law LLC.

79.     The June 18 email from Chern to Upright "Valued Partners" provided that for

vehicles to be eligible for the New Car Custody Program, "The property intended to be

surrendered has no equity".   Thus, LSC, Upright, and Delafield also knew or should have known

that the vehicle was subject to a lien.  LSC, Upright and Delafield wrongfully accepted the

money received from the sale of the Williamses' vehicle from Sperro.

80.     The Williamses ultimately consented to an agreed order granting GCB

Acceptance Corporation relief from the automatic stay.

81.     Based upon the foregoing, Defendants have acted in bad faith.

## COUNT I – DISGORGEMENT UNDER 11 U.S.C. §§ 329(a) and §105(a) (DELAFIELD, UPRIGHT, LSC)

82.     The allegations set forth above are incorporated by reference.

83.     All attorneys representing a debtor either in or in connection with a bankruptcy

case are required to disclose the compensation "paid or agreed to be paid, if such payment or

agreement was made after one year before the date of the filing of the petition, for services

rendered or to be rendered in contemplation of or in connection with the case by such attorney,

and the source of such compensation." 11 U.S.C. § 329(a).  *See also* Fed. R. Bankr. P. 2016.

The precise nature of the fee arrangement must be disclosed, not merely the identity of the

ultimate owner of the funds.

84.     LSC, Upright Law LLC, and Delafield all had an obligation to ensure the filing of

an accurate statement under section 329(a) and Rule 2016(b).  Despite this, they failed to

disclose completely and accurately the compensation paid in this case, in particular both the

ultimate source of the compensation and the sharing of compensation between the various

entities involved.

85.     11 U.S.C. 105(a) authorizes the Court to "issue any order, process, or judgment

that is necessary or appropriate to carry out the provisions of this title."

86.     The incomplete and inaccurate disclosures in this case related to compensation merit ordering LSC, Upright Law LLC, and Delafield to disgorge all fees received and to provide restitution of the full value of the converted property.

## COUNT II – DISGORGEMENT UNDER 11 U.S.C. § 329(b)
## (DELAFIELD, UPRIGHT, LSC)

87.      The allegations set forth above are incorporated by reference.

88.     If compensation is excessive, a court may cancel a debtor's agreement with counsel for compensation or order the return of such payment to the estate or entity that made the payment.  11 U.S.C. § 329(b); Fed. R. Bankr. P. 2017.

89.     Illegal and unethical conduct can serve as a factors considered in analyzing the reasonableness of legal fees paid by a debtor.

90.     The attorney defendants' conduct associated with the Williamses' case was illegal and/or unethical.

91.     Any fee is unreasonable in light of the misconduct of LSC, Upright Law LLC, and Delafield and should be returned under 11 U.S.C. § 329(b).

## COUNT III – VOIDING OF THE FEE AGREEMENT AND DISGORGEMENT UNDER
## 11 U.S.C. §§ 526(c)(1) and 105(a)
## (DELAFIELD, UPRIGHT, LSC)

92.     The allegations set forth above are incorporated by reference.

93.     The Bankruptcy Code provides that "any contract for bankruptcy assistance between a debt relief agency and an assisted person that does not comply with the material requirements" of 11 U.S.C. §§ 526, 527, or 528 "shall be void and may not be enforced by any Federal or State court or by any other person, other than such assisted person." 11 U.S.C. § 526(c)(1).

94.     Cause exists to void the contract pursuant to 11 U.S.C. § 526(c)(1) because the

fee agreement with the Williamses did not comply with the material requirements of 11 U.S.C.

§§ 526, 527, or 528.  Among other things, the fee agreement required under 11 U.S.C. § 527

appears to have been provided to the Williamses more than a month after LSC provided

bankruptcy assistance, as that term is defined in 11 U.S.C. § 101(4A), to the Williamses.  The

disclosures provided by Upright were similarly provided more than a month after the first

bankruptcy assistance was provided.

95.     All fees paid to the defendants should be disgorged under 11 U.S.C. § 105(a).

## COUNT IV – INJUNCTION 11 U.S.C. § 526(c)(5)(A)
## (DELAFIELD, UPRIGHT, LSC)

96.     The allegations set forth above are incorporated by reference.

97.     The Bankruptcy Code provides that:

> Notwithstanding any other provision of Federal law and in addition to any other
> remedy provided under Federal or State law, if the court, on its own motion or on
> the motion of the United States trustee or the debtor, finds that a person
> intentionally violated this section, or engaged in a clear and consistent pattern or
> practice of violating this section, the court may—
>
> (A)   enjoin the violation of such section; or
>
> (B)   impose an appropriate civil penalty against such person.

11 U.S.C. § 526(c)(5).

98.     LSC, Upright Law LLC, and Delafield have intentionally and/or systematically

violated 11 U.S.C. § 526(a)(2) by, among other things, advising debtors to sign declarations

regarding Statements of Financial Affairs that reported payment to Upright Law LLC instead of

payments to LSC.

99.     LSC has intentionally and systematically violated 11 U.S.C. § 526(a)(3)(A) by, among other things, misrepresenting to prospective debtors that it is a firm with nationwide offices and is able to represent them in, for example, cases filed in Virginia.

100.     Pursuant to 11 U.S.C. § 526(c)(5)(A), LSC, Upright Law LLC, and Delafield should be enjoined from violating 11 U.S.C. § 526.

### COUNT V – CIVIL PENALTIES UNDER 11 U.S.C. § 526(c)(5)(B) (DELAFIELD, UPRIGHT LAW, LSC)

101.     The allegations set forth above are incorporated by reference.

102.     Cause exists to impose civil penalties under 11 U.S.C. § 526(c)(5)(B) against LSC, Upright Law LLC, and Delafield in an amount not less than $5,000.00 each.

### COUNT VI – 11 U.S.C. § 105 AND INHERENT POWER (ALL DEFENDANTS)

103.     The allegations set forth above are incorporated by reference.

104.     Cause exists for the court to use its inherent power and the authority granted to it under 11 U.S.C. § 105(a) to prohibit Delafield, LSC, Upright Law LLC, Allen, Chern, and Scanlan from practicing before this court whether directly or indirectly through any companies in which they have any ownership interests or management authority.  Cause also exists to sanction them monetarily.

105.     Cause exists for the court to use its inherent power and the authority granted to it under 11 U.S.C. § 105(a) to require Sperro and its affiliates to disgorge all funds received as a result of the Sperro Agreement, and to enjoin Sperro and its affiliates from remitting or providing any funds to LSC or Upright Law LLC or to any affiliate, member, or agent of either of those entities.

WHEREFORE, the United States Trustee, by counsel, requests that the court:  (i) require the defendants to disgorge funds received; (ii) cancel the debtors' retainer agreement with Upright Law LLC and/or Law Solutions Chicago, LLC, and Darren Delafield; (iii) enjoin the debt relief agency defendants from committing future violations of 11 U.S.C. § 526; (iv) impose appropriate civil penalties against the debt relief agency defendants; (v) indefinitely prohibit Darren T. Delafield, Upright Law LLC, Law Solutions Chicago, LLC, Jason Royce Allen, Kevin W. Chern, and Edmund Scanlan from practicing before this court whether directly or indirectly; (vi) order Sperro LLC and its affiliates to disgorge funds received, and prohibit Sperro LLC and its affiliates from remitting any funds to Upright Law LLC, Law Solutions Chicago, LLC, or any of their affiliates, members, or agents; and (vii) take such other action as the court deems necessary to deter such misconduct and similar schemes in the future.

Date:   May 31, 2016

Respectfully submitted,
JUDY A. ROBBINS
United States Trustee
By: /s/ Margaret K. Garber

Margaret K. Garber (VSB No. 34412)
Assistant United States Trustee
Office of the United States Trustee
United States Department of Justice
210 First Street, S.W., Suite 505
Roanoke, Virginia 24011
540-857-2829
margaret.k.garber@usdoj.gov