UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| TIMOTHY JAMES WILLIAMS, JR., and ) | |
| ANDRIAN SHANNON WILLIAMS, ) | |
| ) | Case Number 15-71767 |
|     Debtors. ) | |
| JUDY A. ROBBINS, ) | |
| United States Trustee For Region Four, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Adversary Proceeding No. 16-07024 |
| ) | |
| DARREN DELAFIELD, UPRIGHT LAW ) | |
| LLC, LAW SOLUTIONS CHICAGO LLC, ) | |
| JASON ROYCE ALLEN, KEVIN W. ) | |
| CHERN, EDMUND SCANLAN, and ) | |
| SPERRO LLC, ) | |
| ) | |
|     Defendants. ) | |
| IN RE: ) | |
| ) | Chapter 7 |
| JESSICA DAWN SCOTT, ) | |
| ) | Case Number 16-50158 |
|     Debtor. ) | |
| JUDY A. ROBBINS, ) | |
| United States Trustee For Region Four, ) | |
| ) | |
|     Plaintiff, ) | |
| v. ) | Adversary Proceeding No. 16-05014 |
| ) | (consolidated with Adversary |
| JOHN C. MORGAN, JR., JOHN C. ) | Proceeding No. 16-07024) |
| MORGAN, JR., PLLC, UPRIGHT LAW LLC, ) | |
| LAW SOLUTIONS CHICAGO LLC, JASON ) | |
| ROYCE ALLEN, KEVIN W. CHERN, ) | |
| EDMUND SCANLAN, and SPERRO LLC, ) | |
| ) | |
|     Defendants. ) | |

# MEMORANDUM OPINION

Judy A. Robbins, the United States Trustee for Region Four (hereafter "the United States Trustee"), filed a Complaint against the above referenced Defendants (hereafter "Upright" or "the Upright Defendants") in two Adversary Proceedings[1] seeking the disgorgement of funds received by the Upright Defendants, cancellation of the debtors' retainer agreements with Upright Law and counsel, and enjoining the Upright debt relief agency Defendants from committing future violations of 11 U.S.C. § 526, imposing appropriate civil penalties against the Upright debt relief agency Defendants, indefinitely prohibiting the Upright Defendants from practicing before this Court, and for such other action as necessary to deter such alleged misconduct and similar schemes in the future. By Order entered October 4, 2016, the Court set certain pre-trial discovery deadlines, including the requirement that all proposed exhibits were to be filed by the parties on or before August 25, 2017, with the trial beginning on September 25, 2017. This deadline was later extended and exhibits were filed by the parties on September 8, 2017.

On September 11, 2017, the Upright Defendants filed a Motion to File Confidential Exhibits Under Seal (hereafter "Motion"), to which the United States Trustee objected. By Order entered September 19, 2017, the Court granted the Motion temporarily. Upon conclusion of the trial, the Court directed any interested party to submit a brief setting forth specific factual representations to justify the continued sealing of the exhibits and an explanation of why alternatives to sealing would not provide sufficient protections or submit redacted copies of the

---

[1] These adversary proceedings were consolidated for trial by Order entered August 18, 2016. Sperro LLC is excluded from the definition of Upright Defendants.

2

documents sought to be protected from view with specific representations as to why the particular redactions are necessary. [2]

Trial of this matter began on September 25, 2017 and concluded on September 28, 2017, at which point the Court took the matter under advisement. On October 19, 2017, the Upright Defendants filed their Brief in Support of Continued Sealing of Admitted Confidential Exhibits Previously Filed with the Court requesting that the Court permit the continued sealing of the parties' admitted trial exhibits previously filed under seal and designated "Confidential", permit copies of admitted exhibits previously filed under seal to be filed with proposed redactions and permit the Upright Defendants to withdraw from the public record any proposed trial exhibits previously filed under seal that were not marked into evidence at trial and offered for admission or admitted. The United States Trustee filed her Response objecting to the relief requested by the Upright Defendants asserting that the brief does not set forth specific factual representations to justify continued sealing of the exhibits and that the Upright Defendants have not articulated any particularized harm that will befall them if the information is not sealed. The United States Trustee argues that the Upright Defendants have therefore failed to meet their burden to demonstrate that any of the information sought to be concealed from public view meets the requirements of 11 U.S.C. § 107(b) or that the presumption in favor of public access has been overcome. The Upright Defendants then filed their Reply in further support of their request for continued sealing of the documents. The parties have now fully briefed the issues and the matter is now ripe for decision by the Court. For the reasons set forth below, the Court will grant the Motion in part and deny the Motion in part.

---

[2] In the Fourth Circuit, trial courts are guided by *Virginia Dep't of State Police v. Washington Post,* 386 F.3d 567, 576 (4th Cir. 2004), which provides in part that a trial court "must . . . weigh the appropriate competing interests under the following procedure: it must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing.

CONCLUSIONS OF LAW

11 U.S.C. § 107(a) provides that, with certain exceptions, documents filed on the bankruptcy court docket are public records and open to examination by an entity. "There is a strong presumption and public policy in favor of public access to court records." *In re Borders Group, Inc.,* 462 B.R. 42, 46 (Bankr. S.D. N.Y. 2011). A court's ability to limit the public's right to access remains an extraordinary measure that is warranted only under rare circumstances as "public monitoring is an essential feature of democratic control." *Geltzer v. Andersen Worldwide, S.C.,* 2007 WL 273526, at *2–3, 2007 U.S. Dist. LEXIS 6794, at *7 (S.D. N.Y. Jan. 30, 2007) (citing *United States v. Amodeo,* 71 F.3d 1044, 1048 (2d Cir. 1995)). *See also Va. Dep't of State Police,* 386 F.3d at 567.

However, Section 107(b) also provides that the court may "(1) protect an entity with respect to a trade secret or confidential research, development or commercial information; or (2) protect a person with respect to scandalous or defamatory matter . . . ." 11 U.S.C. § 107(b). Inherent in the language of § 107(b) is the requirement that the party requesting the extraordinary relief provide the court with specific factual and legal authority demonstrating that a particular document at issue is properly classified as "confidential" or "scandalous." *See United States v. Continental Airlines, Inc. (In re Continental Airlines, Inc.),* 150 B.R. 334, 340–41 (D. Del. 1993) (refusing to seal documents based on "nothing more than the mere possibility" that they contained defamatory information). Despite the mandates of § 107(b), the Court has no authority to seal public documents or information derived from public documents. *Chase v. Chase (In re Chase),* 2008 WL 2945997, at *7 (Bankr. S.D. N.Y. July 25, 2008*). In re Anthracite Capital, Inc.*, 492 B.R. 162, 171 (Bankr. S.D. N.Y. 2013).

4

Section 107(a) of the Bankruptcy Code codifies the public's common law right to inspect and copy judicial records and creates a presumption that all documents filed in a bankruptcy case are accessible to the public and subject to examination by the public at reasonable times without charge. 11 U.S.C. § 107(a); *Video Software Dealers Assoc. v. Orion Pictures Corp. (In re Orion Pictures Corp.),* 21 F.3d 24, 26 (2d Cir. 1994); *see also Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."). This common law right is not absolute, however, and concealment may be necessary if access is sought for an improper purpose. *See Nixon,* 435 U.S. at 597–98. *Anthracite Capital*, 492 B.R. at 170.

As such, § 107(b) creates narrow statutory exceptions to the public access presumption, mandating that the Court protect confidential information and defamatory or scandalous material upon request of a party in interest. 11 U.S.C. § 107(b) ("On request of a party in interest the bankruptcy court *shall* . . . protect an entity with respect to . . . confidential . . . commercial information [ ] or . . . protect a person with respect to scandalous or defamatory matter contained in a paper . . . .") (emphasis added); *see also Orion Pictures Corp.,* 21 F.3d at 27 ("[I]f the information fits any of the specified categories, the court is *required* to protect a requesting interested party and has no discretion to deny the application.") (emphasis in original). In order to ensure that confidential information is protected as required under § 107(b), Bankruptcy Rule 9018 establishes the procedures to invoke § 107 and allows the Court to "make any order which justice requires." Fed. R. Bankr. P. 9018; *Borders Group,* 462 B.R. at 46. Bankruptcy Rule 9018 does not expand a bankruptcy court's ability to limit access to papers filed beyond the powers conferred in § 107, nor does it provide a separate basis for relief. *In re Gitto/Global Corp.,* 321

B.R. 367, 373 (Bankr. D. Mass. 2005); *see also* Fed. R. Bank. P. 9018 advisory committee's note ("This rule provides the procedure for invoking the court's power under § 107 of the Code."). *Anthracite Capital*, 492 B.R. at 170–71.

The moving party bears the burden of demonstrating that the information it is seeking to protect from public viewing is both commercial and confidential. *In re Oldco M Corp.,* 466 B.R. 234, 237 (Bankr. S.D. N.Y. 2012); *In re Northwest Airlines Corp.,* 363 B.R. 704, 706 (Bankr. S.D. N.Y. 2007). "Good cause" is not a statutory requirement for granting the requested relief under § 107(b). *Orion Pictures Corp.,* 21 F.3d at 28; 11 U.S.C. § 107(b)(1). Instead, the Code mandates that a bankruptcy court grant the requested relief if the information is "confidential commercial information." 11 U.S.C. § 107(b); *Orion Pictures Corp.,* 21 F.3d at 28. Congress used the word "or" to distinguish between trade secrets and commercial information in § 107; thus, "[c]ommercial information need not rise to the level of a trade secret to qualify for protection under section 107(b)." *Borders Group,* 462 B.R. at 47 (citing *Orion Pictures, Corp.,* 21 F.3d at 28). *Anthracite Capital,* 492 B.R. at 177–78.

When protection is required under § 107, the Court has discretion in deciding *how* to protect commercial information as § 107 does not mandate sealing—only protection. *Borders Group,* 462 B.R. at 47 (emphasis added); *see also* 11 U.S.C. § 107(b) ("[T]he bankruptcy court shall . . . *protect* an entity with respect to confidential . . . commercial information . . . .)" (emphasis added). "Redacting documents to remove only protectable information is preferable to wholesale sealing. The policy favoring public access supports making public as much information as possible while still preserving confidentiality of protectable information." *Borders Group,* 462 B.R. at 47 (citing *Nixon,* 435 U.S. at 597–98).

In *Orion Pictures*, the Third Circuit held that a party (the Video Software Dealers Association or "VSDA") challenging a protective order involving a promotional agreement between the debtor and a third party in the bankruptcy court was incorrect in its analysis of the relevant standard under Section 107(b). Specifically, the court held that

> VSDA argues that the district court misinterpreted § 107(b) by not invoking a principle applied in *United States v. IBM Corp.,* 67 F.R.D. 40, 46 (S.D. N.Y. 1975)—involving discovery under the Federal Rules of Civil Procedure—that confidential commercial information must rise to the level of a trade secret to be entitled to protection.
>
> VSDA is wrong, however, because § 107(b) is carefully drafted to avoid merging "trade secrets" with "confidential commercial information". By authorizing protection for trade secrets *or* confidential commercial information, *In re Lomas Fin. Corp.,* No. 90–7827, 1991 WL 21231 (S.D. N.Y. Feb. 11, 1991); *see also In re Epic Assocs. V.,* 54 B.R. 445, 449–50 (Bankr. E.D. Va. 1985), the statute flatly rejects the very concept that VSDA is advancing.
>
> Similarly, Bankruptcy Rule 9018, the procedural rule related to § 107, provides that the "court may make any order which justice requires to protect the estate or any entity in respect of a trade secret *or* other confidential research, development, or commercial information." Bankruptcy Rule 9018 (1993) (emphasis added).
>
> In short, this clear and unambiguous usage of "or" neither equates "trade secret" with "commercial information" nor requires the latter to reflect the same level of confidentiality as the former. Therefore, the district court properly held that courts interpreting § 107(b) need not require that commercial information be the equivalent of a trade secret before protecting such information.

*Orion Pictures Corp.,* 21 F.3d at 28. With these legal principals as a starting point, the Court will address the documents that the Upright Defendants seek to keep under seal.

    I.    <u>Scripts and Training Materials for the Upright Law Employees</u>.

Kevin W. Chern, Upright Law's managing partner, testified that client consultants are provided with scripts, training materials, and presentations during the course of their employment, including documents entitled "Upright University: Consultations" and "Sales Playbook." These documents were admitted into evidence at trial as Plaintiff's Exhibits 36 and 37 and Defendants' Exhibits X, S7, T6, U6, V6, W6, X6, Y6, Z6, A7, B7, C7, D7, E7, G7, H7, I7 and J7. Chern submitted an affidavit in support of continued sealing of these documents, stating in part:

> All staff and attorneys, as a condition of providing services to Law Solutions, Chicago, LLC d/b/a Upright Law LLC ("Upright Law"), enter into a "Confidentiality and Non Disclosure Agreement." Upright Law expects that all employees providing services to the law firm will not disclose Upright Law's technical, financial, marketing, manufacturing, distribution and other business information and trade secrets, including product and services plans, concepts, techniques, processes, methods, systems, designs, strategies, cost data, and software, and will keep information provided to them confidential subject to their pertinent Confidentiality and Non Disclosure Agreements.

*Chern Affidavit*, at ¶¶ 3-4. There was considerable testimony about these exhibits at trial, and the courtroom was not sealed. The United States Trustee opposes the continued sealing of these documents, claiming waiver, insufficient basis that the commercial information would give Upright competitors a competitive advantage, the information is publicly available, and the Upright Defendants have failed to explain why less drastic alternatives other than sealing would be insufficient.

At the present time, the Court will maintain the seal on these documents. Post-trial briefing is not yet complete, and the transcript of the testimony was only recently filed, but not yet publicly available. The test under Section 107(b) is not whether these documents give Upright a competitive advantage, but whether Upright has demonstrated they consist of

8

"confidential . . . commercial information." The Court is satisfied that information in these documents meets the Section 107(b) standard as "confidential" and "commercial." While there may have been testimony at trial in open court about portions of the documents, efforts were made to mark testimony confidential at trial and the full documents were not discussed in every detail. Disclosure of limited information in a confidential document is not necessarily a waiver of the protection of Section 107(b) in the entire document. *Orion Pictures*, 21 F.3d at 28. The Court does not find that waiver of confidentiality has occurred sufficient to negate the seal at this time. However, there is a strong public policy in favor of public access to court records, and First Amendment considerations still come into play as to documents used at trial or in dispositive motions. See *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004); *Level 3 Communications, LLC v. Limelight Networks Inc.*, 611 F. Supp. 572, 579 (E.D. Va. 2009). The Court reserves the right to lift the seal in whole or in part on the documents referenced above pending its decision on the merits of the case.

## II. Upright Law's Partner Handbooks and Newsletters

Upright seeks to maintain the seal on the documents described as Partner Newsletter (Ex. Q6) and Partner Handbooks (Exs. P7, Q7, S7, T7, U7, V7, W7, X7, Z7, and A8). Taking the latter documents first, Upright requires its Partners to enter into partnership agreements, which provide in part as follows:

> Firm and Partner acknowledge that Firm has invested considerable and immeasurable expense in developing processes, forms, and enrollment processes, strategies, software and other intellectual property to most effectively and efficiently generate clients ("Proprietary Information")…Partner agrees to maintain the confidentiality and not disclose or otherwise use the Proprietary Information, except in the provision of legal services in Client's Cases. Partner shall not copy, recreate, reverse engineer or

> otherwise use any of the Firm's Proprietary Information in delivering legal services directly to consumers…..

Exhibits DX O8, ¶ 5.  The Court is satisfied that the Partner Handbooks meet the Section 107(b) test as to commercial and confidential documents, and the seal will be maintained on these documents, subject to the same caveat that the Court reserves the right to unseal them in whole or in part in ruling on the ultimate issues in this case.

The Partner Newsletter is markedly different. Certain of the information in the partner newsletter is publicly available filing formation, including which Upright attorneys were first time filers and the number of cases filed in a given time frame by Upright attorneys. The newsletter also contains discussions of public interviews given by Upright attorneys, and opportunities for upcoming CLE seminars.  This information cannot be construed as confidential. However, information pertaining to marketing strategies, incentives, and client communication matters can fall into the category of both commercial and confidential.  The Court will require Exhibit DX Q6 to be refiled with publicly available information disclosed, and the remaining information redacted at this time.

### III.     Upright's Tax Returns and Financial Information

The Upright Defendants also request that the firm's financial information be kept under seal.  The firm's federal tax returns were produced under a Protective Order entered July 21, 2017.  (Dkt. 106). The tax returns were admitted into evidence as Plaintiff's Exhibits 38, 39, and 40 and as Defendants' Exhibits N5, O5, and P5. Upright further seeks to keep under seal Plaintiff's Exhibit 1, a summary sheet regarding Upright's business operations and profits generated in the Western District of Virginia, including information on the fees paid to Upright

Law, open files in the Western District of Virginia, and refunds the firm has provided clients. Plaintiff's Exhibit 66 details payment and loss information for Defendants Kevin Chern, Jason Allen, and Edmund Scanlan through their employment with Upright.

Courts often determine that the sensitive and confidential nature of financial information warrants the sealing of such materials. *See Pittston Co. v. United States*, 368 F.3d 385, 406 (4th Cir. 2004)(affirming decision to seal certain "confidential, proprietary, commercial, or financial data" produced under a protective order); *TransPacific Tire & Wheel, Inc. v. Orteck Int'l, Inc.*, 2010 WL 2774445 at *3 (D. Md. July 13, 2010)(granting motion to seal tax returns attached to a motion). The United States Trustee contends that various publicly available deposition transcripts provide detailed information regarding Upright's expenses and that testimony was adduced at trial, as was salary information regarding Upright's leadership team. That these individual components were referenced at trial or in discovery is insufficient, at this point, to prevent the continued sealing of the tax returns, which contain far more detailed information than just that referenced by the United States Trustee. The Court will continue the seal on the tax returns pending resolution of the case on the merits, and it will determine to what extent, if any, the tax returns should remain under seal at that time.[3]

### Withdrawal of Confidential Documents Not Admitted as Exhibits

Finally, the Upright Defendants request that they be allowed to withdraw from the public record any proposed trial exhibits previously filed under seal that were not admitted into evidence, either at trial or by operation of this Court's pretrial orders. The Upright Defendants

---

[3] As to Plaintiff's Exhibit 66, Upright has withdrawn its request that the entire document be sealed, and has requested that the last page be redacted. Upon review of the document, the Court believes this to be a reasonable request, and will direct that a redacted Plaintiff's Exhibit 66 be filed, which will not be sealed. The Court reserves the right to lift the redaction in whole or in part pending its decision on the merits of the case.

assert that these documents are not part of the trial record and are no longer relevant to this proceeding. The United States Trustee asserts that this request should be denied as the failure to obtain the admission of an exhibit is not one of the two exceptions provided in Section 107(a), because the Upright Defendants have not met their burden to show that such documents otherwise would have fallen within one of the two exceptions, and because they have failed to explain why less drastic alternatives would not be appropriate.

The Court's pre-trial order provided that the exhibits would stand admitted into evidence if not objected to prior to trial. As the Upright Defendants correctly point out, the United States Trustee objected to each of the proposed exhibits, and they were not offered into evidence at trial. They were not denied admission after being offered into evidence -- but not offered at all at trial. These documents will not be considered by the Court in its ruling on the merits. These documents will remain under seal, and upon the final resolution of this case, including any appeals, if any, the Upright Defendants will be permitted to withdraw these documents.

As to any other exhibits sealed pursuant to this Court's September 11, 2017 Order and not addressed herein, the seal contained in that Order shall be lifted and the parties shall file unsealed copies within fourteen (14) days of the Court's ruling herein.

A separate order shall issue.

**ENTER this 8th day of December, 2017.**

_____
UNITED STATES BANKRUPTCY JUDGE